case, Douglas Probinger appearing for appellant, and Kathleen Moran appearing for attorney. Is Mr. Probinger here? Yes, good morning, your honors. Would you like to reserve some time for rebuttal? I don't think that will be necessary, your honor, but I will probably have some time left over. May it please the court, Douglas Probinger for the Airport Business Center. Your honor, I believe this appeal involves, I don't know if they're simple, but three issues. The first issue is, does Rule 41, as incorporated by Federal Rule of Bankruptcy Procedure 7041, prohibit or apply to motion practice? And I actually said this in my brief more articulately than I can say it this morning, so if the court will indulge me, I'd like to read our position. Rule 41 was designed to address lawsuits, not contested matters. But a fair reading of Rule 41 in the bankruptcy contested matter arena would prohibit a debtor from making the same claim three times. Let me ask you a question first of all. Rule 41 talks about an answer. Things happen if an answer is filed. What document in these, I guess, three cases was the answer? Probably none. The motion was opposed, but again, because the rule was written apparently, well, it was written for federal court where you don't have contested matters like we do in bankruptcy court. So I think, again, there's no answer. So the particulars of Rule 41 talk about an answer and an order dismissing. And none of those things happened in this case because it was a motion. But you filed a response to each of the three motions, didn't you? Yes. So what is that? Is that an answer or that's just nothing for purposes of Rule 41? Well, under Rule 41, I don't think it's an answer. But even if it is, I believe the second time they withdrew the motion, that bars them from asserting it again. You just said the second piece is an order dismissing. So in this case, can you identify the orders of dismissal? No, Your Honor. There was one the third time, but as is, I believe, standard practice, although maybe now it will change, when someone brings a motion, a contested matter, if they withdraw it, that's it. It goes off calendar. Even if the other side here, the lien holder, had not responded, if the debtor had simply withdrawn the motion, it would have vanished. But counsel, just for one second. So if there's no answer, there's no answer filed, your response doesn't constitute an answer, then at what point does the debtor lose the ability to withdraw? Well, I don't think the debtor ever loses the ability. So that's under your theory, they could go all the way to trial, and right before judgment is entered, they could still withdraw the motion? Unilaterally. Well, I don't think that would happen as a practical matter, because to get a hearing, well, I suppose they could, because if the motion... I think this case shows that as a practical matter, almost anything can happen, and did. Okay. Well, there was some criticism in the respondent's brief about not doing this earlier, and it frankly didn't occur to me, but somewhere I knew that if you dismissed a federal adversary proceeding or complaint twice, the second time was with prejudice. So we're arguing that this rule should apply here. And I covered it in my brief, I think I'll leave it at that, and go to the next issue, which I believe is appropriate for the court to eliminate the $36,000 in interest, which are shown on Exhibit E. There's an Exhibit E which clearly shows how the debtor and the lien holder calculated the lien, and it includes interest of $36,864, which is identified as credit card interest. Now, we're not, my client is not arguing usury. What we're saying is the debtor, in a lien avoidance action, where it's, frankly, it was not an arm's-length transaction, this was a friendly creditor, there's nothing to prevent them from just adding whatever they want. So there doesn't seem to be any dispute here. I mean, we disputed it, but we're not arguing the evidence here. The court found that there was $153,000 that Mr. Atala provided the debtor. However, then when they calculated the balance, they added this $36,864 in usurious interest. What we're saying is not that my client has the right to assert that, but that the debtor has to show that it's a legitimate charge, and that the debtor cannot show that it's a legitimate charge because the debtor would not have to pay that if the debtor chose to. Of course, it wasn't in the debtor's interest here to reduce the amount of the lien. It was in the debtor's interest to have the lien be as high as possible. Counsel, are you saying that there was no proof that, in fact, Mr. Atala paid the $36,000 in credit card interest, that that was an obligation, they just simply incorporated some number into a note, and there was no proof that that existed? Or do you have a different theory? Am I missing that? Your Honor, I hadn't thought of that. I believe he testified that he paid that. Mr. Atala, we took his deposition, it was provided to the court, and he said he paid that. Now, whether he could charge that to Mr. Afal, I don't believe so, because it is usurious. And they label it at 24% interest. They didn't say it was usurious. They said it's 24% interest, and I don't think it's an appropriate charge. All right. But is it interest when, I mean, he paid this interest on behalf of the debtor, and it wasn't usurious for the credit card company to charge that, correct? His testimony was he gave money to the debtor on his credit card. Or let the debtor use his credit card, I believe. I'm sorry, I don't remember specifically, but they did, somehow they came up with this 24% interest. Well, I thought he was paying, Mr. Atala was paying debts of Mr. Afal directly and charging them to his credit card. And then, of course, when he went to pay it, he had to pay the interest that he'd accrued in addition to the principal amount. And he testified, according to you, that he did pay both the principal and the interest amount, correct? That's correct. I believe that's correct, yes. All right. And, I mean, well, okay. However, again, we suggest that the debtor has the obligation to only include legitimate charges, and that that 24% does not appear to be consistent with California law. Finally, we made no argument about the evidence here, so that was in the reply brief. But we're not arguing the sufficiency of the evidence for the court's decision. We're simply raising the two issues that I pointed out a minute ago. Okay, I have nothing further. If there's some questions, which probably not. Go ahead. No, I'm just confused about what you think we ought to do here under the circumstances. In other words, you think Rule 41 applies. You think that an answer needed to be filed before the debtor was prohibited from withdrawing. So what happened under your analysis then is that the debtor was permitted to withdraw the first motion because no answer had been filed. Dismissal number one under Rule 41. The second proceeding is filed, and no answer is filed, although you responded. A hearing is set, evidentiary hearing is set. Again, the debtor withdraws before the trial. All you do is move to vacate the hearing. So that's dismissal number two under your theory? No, Your Honor, that was dismissal number three. There was an initial motion. We opposed it, requested a hearing. Motion was withdrawn. There was a second motion. We requested a hearing. Motion was withdrawn. No, there was an evidentiary hearing set. You moved to have the hearing dropped after the debtor withdrew the motion because you didn't want to attend the hearing. Then you have proceeding number three that goes all the way through to trial, right? Yes, Your Honor, that's correct. So I mean, the bankruptcy court made this analysis that what happened was when you moved to drop the hearing, that constituted a stipulation to dismissal, and therefore that didn't count as a notice of withdrawal. You dispute that? No, Your Honor. Okay, I think you do, but that's okay. Oh, I'm sorry. I didn't understand. Yeah, I meant you disagree with the concept that you stipulated to dismissal by asking the court to drop the hearing. You know, I haven't thought about that, I suppose. Again, the rule doesn't fit exactly what happened. There was an evidentiary hearing, and the court needed an order to take it off calendar, and we agreed to it. But I think coming back to the policy, the debtor made a motion, withdrew it. There was a second motion, withdrew it, pursuant to a stipulation, and then came back again with this third motion asserting the same claim. But you realize that the rule only prohibits two consecutive notices of withdrawal, not a notice and then a combination stipulation to withdraw, right? The rule says if the debtor has previously withdrawn or previously had the case dismissed by notice, the second will be the one that bars further litigation, will be considered an adjudication on the merits, not a combination of something other than two notices of withdrawal or two notices to dismiss. But, Your Honor, I concede that because, again, the rule is written for litigation and not contested matters. So it is, I mean, it's more of a policy argument than a strict rule interpretation. Thank you. Okay. Yes, I appreciate it. Okay. All right. Thank you very much. We'll give you two more minutes, if you wish, after Ms. Moran is finished. So, Ms. Moran, please go ahead. Good morning, Your Honors. Kathleen Moran for the debtors. I think Mr. Provencher hit the nail on the head most recently when he says the rule simply doesn't fit these facts, and we have to start there. I think the second point, I lost my train of thought. It's worth looking at the rule in terms of what it applies to, and it talks in subsection A about either a notice of dismissal before an answer is filed or a stipulation of dismissal. And it's clear from the docket that neither of those things appear on the docket. There was no notice. Let me ask you, I've never seen an answer in response to a motion in a bankruptcy case. It's just not, in my experience, that's not the way it's done. But the rule says certain things happen when an answer is filed. So what are we to do with that? I think the fairest interpretation of the rule when you bring it in via 9013 is that the response should be deemed an answer. So what happened if they objected, which you constitute as an answer? What happened that allowed you to withdraw, not you personally, the debtors, to withdraw the motion? How could the court do that under your scenario? I think Judge Novak hit it on the head. Many people were asleep at the switch. And my understanding of the way ECF works is withdrawal is an event on ECF, and you use it, among other things, when you've made some sort of error in the document that's filed. So it seems to be an all-purpose event that can either be, gee, I screwed up in filing this in some fashion, or I'm walking away from the contentions of the previous pleading. But under your analysis, the debtor couldn't withdraw if an answer, which is your equivalent of a response, had been filed. So the debtor wasn't legally entitled to that relief, yet the court, the other creditor, and the debtor got away with something. What is it? I don't have a name for it. So did the second filing constitute a continuation of the original filing, or was there a dismissal and a new action filed on the second filing? I think you could denominate it either way if you determine that the withdrawal did not end the matter in the first instance. Then in the second instance, you have another withdrawal after an objection had been filed, which is ineffective under your analysis. And then you have a motion to vacate the hearing that had been previously set that would have been on the court's calendar, and the court finds that that's a stipulation. How is that a stipulation? I would not have deemed it that. It's hard to see what anybody agreed here. Exactly. So what happened then before the third action is filed? Is there a dismissal? Is there a termination? What happened to that action at that point? Is it a continuation of the first? Is it a separate action? The legal theories under the three motions are all the same. And the parties are all the same. That's right. So you could deem the entire thing a single action, a single motion. So then why aren't the requests for admissions then operative if the entire action is one continuous flow? That's a good question, and it wasn't addressed. I think everybody at the trial level treated it as though the first action had been dismissed and there was no obligation then to respond. So actually what it looks like is the first action was dismissed, the section action was dismissed, both on the motion of the debtor by withdrawing the motion, and the third action was the final action that went to trial. And we're just struggling with how do we apply the rule? If the rule is applicable, as you suggest, these actions were ineffective. On the other hand, if the rule doesn't apply, as Mr. Provencher argues, because there's no answer filed, then this is the third strike. You've had two prior dismissals. Why isn't he right? And how do we resolve that? I think you have to look, you have to start with the language of the rule. And we simply don't have either a notice of dismissal or a stipulation. We have a notice of withdrawal. Is that the equivalent of a dismissal when you say I don't want to proceed? I don't think it is. I think it's an all-purpose catch-all ECF event. Okay. So, Ms. Moran, you can see we're struggling with this, and I appreciate both you and Mr. Provencher trying to help us figure this out. So it seems like what we have here is two basically ineffective withdrawals or dismissals of the first two motions. And so, you know, my question is what's the impact of that? Does it mean nothing that those motions are just still kind of sitting there on the docket and because they were ineffective, you know, it's okay for the court to proceed with the third motion, which actually went through to trial? You know, what do we do with these two ineffective withdrawals or dismissals? I think the court can look to 9013 that says unless these rules from the adversary chapter apply, unless the court rules otherwise. No, orders otherwise, and it's under 9014C. And the court didn't order otherwise before it made the decision after the fact, did it? In the third act, in the action that's before the court, the court considered whether that rule applied and found that it didn't based on the dissonance between the facts on the docket and the language of the rule. After Mr. Provencher raised the issue with the court, it made the determination, not at the outset of the litigation did the court order otherwise, giving notice, the rule that this particular rule 41, 7041, wouldn't apply in this case. I think that's correct. All right. And I want to address the usury issue briefly because Mr. Provencher doesn't tell us, he wants to tell us that the inclusion of the out-of-pocket that Mr. Atala expended are somehow illegitimate charges. He provides no, and in his brief he says they were unlawful, but he provides no basis on which that unlawful characteristic is to be determined. And I think the intention is that because the debtor, if it were genuinely interest, rather than a measure of the money that the cost to Atala of paying off Ahel's bills was, that perhaps the debtor could have opposed, contended it wasn't enforceable. And that's exactly the context in which the usury laws come into play, and they say that only the debtor can raise usury as a defense to a contract, to the imposition of interest. So I think that those expenses were real on the part of Mr. Atala, and there is no bar to the debtor making Atala whole and no basis on which to find that those charges are unlawful. Okay. Any further questions? No. Okay. Thanks very much. Let's go back to Mr. Atala. Anything you wanted to add? You have two minutes left of your time, Mr. Provencher. No, Your Honors. I think we've covered everything. Okay. Thank you. Thank you both for helping us with a very difficult case. So the matter is submitted. Thank you.
judges: Faris, Brand, and Gan